**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTONS DIVISION**

| | | |
|---|---|---|
| **HATTIE NNEJI AND OBINNA NNEJI** | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| **VS.** | ) | **NO. _____** |
| | ) | |
| **DR. GREGORY BOWHUIS,** | ) | |
| **DR. SCOTT R. MURI, SPRING BRANCH ISD** | ) | **JURY REQUESTED** |
| **DEFENDANTS** | ) | |

_____

**CIVIL RIGHTS COMPLAINT WITH REQUEST FOR INJUNCTIVE RELIEF AND FOR TRIAL BY JURY**
_____

Plaintiffs Hattie and Obinna Nneji, by and through his attorneys, Diogu Law Firm PLLC and Law Office of Bassey Akpaffiong, complains against Defendants, and requests injunctive relief and trial by jury as follows:

## I. INTRODUCTION

1. This is an action brought by Hattie and Obinna Nneji, African American and US Citizen whose national origin is Nigeria, parents of Obinna and Adanna Nneji, their minor Children to vindicate profound deprivations of his constitutional rights caused by race and national Origin animus based discrimination by based police brutality.

2. On or about January 10th, 2019, Plaintiffs minor children were terminated from Spring ISD, even though they are resident within the Jurisdiction of the School District based on privately protected information that was illegally obtained from Uber.

3. During the time, Nnejis' children were unlawfully detained by Defendant Bowhuis, bullied then rudely interrogated calling them essentially **"NIGGER, LAIRS, DRUG DEALERS AND AFRICAN MONKEY"** while interrogating them, in a well coded dog whistle format.

4. At the time, the Children were known to be defenseless in complete control of the Defendant, Bowhuis, without their parents' presence.

5. The individually sued Defendant have bullied and called their son a drug pusher/dealer until he was finally terminated from the School by the Defendant. He did so without evidence the only other explanation is the boy is black and his father African.

6. In concert or conspiracy, Defendants then maliciously and baselessly caused Plaintiffs to be dismissed from school even though they have a constitutionally right for free education and the right to be free from hazardous learning environment.

## II. JURISDICTION, VENUE, AND NOTICE

7. This action arises under the Constitution and laws of the State of Texas and of the United States, including Article 1 , Section 19, of the Texas Constitution and Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

8. This case is instituted in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## III. PARTIES

9. At all times relevant hereto, Plaintiffs Hattie and Obinna Nneji where residents of the State of Texas and a citizen of the United States of America.

10. At all times relevant hereto, Defendant was a citizen of the United States and a resident of the State of Texas and was acting under color of state law in his capacity as a law as the Assistant Principal employed by the Spring Branch ISD, is sued individually.

11. Defendant, Spring Branch ISD hereinafter "Spring Branch ISD," is a Texas municipal corporation and is the legal entity responsible for itself and for the Memorial High School. This Defendant is also the employer of the individual Defendants and is a proper entity to be sued under 42 U.S.C. § 1983.

2

12. At all times relevant hereto, Defendant Dr. Scott R. Muri was a citizen of the United States and a resident of the State of Texas. Defendant Dr. Scott R. Muri is sued in his official capacity as the Superintendent, employed by the Spring Branch ISD, and was acting under color of state law.

13. Defendant Spring Branch ISD, are properly sued directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

14. The Spring Branch ISD, is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant Dr. Scott R. Muri in his official capacity as their superintendent, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

## IV. STATEMENT OF FACTS

15. On or about Thursday, without prior notice to the Plaintiffs, the Assistant Principal of Memorial High School in the Spring Branch ISD, Mr. Bowhuis, terminated Obinna and Adanna Nneji from Memorial High School without prior notice. See attached Exhibit "A" He did so based on uncorroborated information. (Plaintiff Aff. Pp. 2)

16. Since the initial enrollment of Nneji's children Obinna and Adanna Nneji at the School, the Assistant Principal Bowhuis has singled out the Nneji family for desperate treatment, in so doing he has made Nneji's children feel unwelcome at Memorial High School thereby creating a hazardous learning environment for the children.

17. When Ms. Nneji enrolled her children in Memorial High School, she provided the school all the required evidence showing that her children were eligible to attend the public schools of the district.

18. Nonetheless, the assistant principal Mr. Gregory Bowhuis had a police officer, (a) escort the Nneji's to their apartment, (b) walked them to the door (c) forced them to open the door so he could inspect the apartment to verify they really lived there. Despite the outrageous conduct of the public officer they cooperated fully with Assistant Principal Bowhuis and the officer.

19. Despite Nneji's cooperation, Mr. Bowhuis and Memorial High School have singled out and have continued to treat the Nneji family unfairly. Mr. Bowhuis has on more than one occasion called the Nnejis liars. The extremely questionable, rude, and disrespectful behaviors of Mr. Bowhuis towards the family is unbecoming of a public official in his position.

20. Through the school year, Mr. Bowhuis would make odd comments to the children about the cars that their father drives. It appears that Assistant Principal Bowhuis is stalking the Nneji family. By way of example, (1) he mentioned to one of the children that he saw her father on highway 610 driving an expensive car; (2) He once inquired on why is Mr. Nneji is always in the galleria area if he resides in Spring Branch. (3) He also made comments about the clothes Mr. Nneji wears stating that he admires his choice of attire. (4) Mr. Bowhuis also questioned Mr. Nneji about the properties that he owns and (5) Interrogating him about why is he living in an apartment if he owns a million dollar home. We reside at 10402 Town and Country Way, Houston, TX 77024

21. There can be no other explanation other than Assistant Principal Bowhuis wanted to force the Nneji family to voluntarily withdraw their children from that school.

22. Assistant Principal Bowhuis behavior took a different turn on Thursday, January 10, 2019 when an Uber Driver dropped off the children at school. Specifically, Mr. Bowhuis

rushed to the uber driver and forced the driver to give him a receipt so he can see where the Nneji children were picked up.

23. Mr. Bowhuis called Obinna and Adanna Nneji in his office and spoke to them in an extremely rude manner. During this interrogation, Mr. Bowhuis called them liars, and without notice to Mr. and Ms. Nneji, he withdrew the children from school. Assistant Principal Bowhuis never once made an effort to contact Mr. or Ms. Nneji.

24. In that meeting, without their parents, he accused them of lying about their residence. The kids denied his accusations and he pulled out his phone and showed them a screenshot of the Uber driver's car report. He told the kids he pulled the Uber driver over and asked him where he picked the kids from. The kids told them they spent the night with a family member. He said they were lying and that he was withdrawing them from the school and they were no longer allowed at Memorial High School.

25. If this was not enough, he questioned Obinna Nneji on "why he dress as such" referring that his attire is expensive. He asked him why he always carries a certain bag and has searched his bag, as he has done on numerous occasions. In the past, Assistant Principal Bowhuis has asked children around the school whether Obinna Nneji has offered them drugs. Obinna Nneji feels that because of his race, his family has been stereotyped as drug dealers.

26. This type bullying has been extremely harmful to the children, especially coming from a man that is a leader and represents the school. With Mr. Bowhuis questioning Nneji's family and entering of Nneji's dwelling as he did leads one to believe that he has a personal vendetta against Nneji's family. In fact, Adanna was so traumatized that she wrote the attached note. See attached Exhibit "B"

27. The Nneji family has a privacy interest in the information collected by the Uber Driver when it picked the children up. For example, when they used Uber because they trusted them with your information including our pick up location and to keep that information private. They do so pursuant Uber's policy and commitment of keeping that trust. Nonetheless, Defendant, Mr. Bowhuis, violated their privacy right when he forcibly pried from the Uber driver that dropped Plaintiff's children at the School his pickup location. (Plaintiff Aff. Pp. 2)

28. All through this period, Defendant Spring Independent School District, knew or should have known about Defendant, Bowhuis abusive behavior towards the Plaintiff, but did nothing to change it.

29. At all these time in question, the Nnejis, were residence of this school District, as described under, Martinez v. Bynum, 461 U.S. 321 (1983)(Residence" requires living in the district and having the present intention to remain there) and adopted by the Spring Branch Independent School District. See attached, Exhibit "C"

30.  There can be no other explanation to the treatment the Nnejis have received since they enrolled this School and in the School District, other than Race and National Origin.

31. As such, Defendants, Mr. Bowhuis and the Spring Independent District's treatment the Nnejis is based both on racial and national origin animus.

32. Attorney Akpaffiong attempted to resolve this matter and has not received a response from the Defendants, so as of this instant time, the Children have been out of school without an education for four (4) school days.

**V.CLAIMS FOR RELIEF**
**FIRST CAUSE OF ACTION**
**DUE PROCESS VIOLATION 42 U.S.C. § 1983 DUE PROCESS AND ARTICLE 1,**
**SECTION 19 OF TEXAS CONSTITUTION, DUE CAUSE OF LAW**

33. Plaintiffs hereby reincorporate and adopt by reference for all purposes each and every allegation contained in the preceding paragraphs and sections

34. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

35. Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

36. At the time of the complained of events, Plaintiffs had a clearly established constitutional right under the Fourteenth Amendment that requires, at a minimum, notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

37. Any reasonable in the Defendants' position knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

38. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Spring Branch ISD agents/officers and their acts or omissions were conducted within the scope of their official duties or employment.

39. Plaintiffs sue the defendants under § 1983, which "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Livadas v. Bradshaw, 512 U.S. 107, 132 (1994).

40. To state a claim under § 1983, Plaintiffs must allege facts that show (1) have been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978); Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005).

41. The Fourteenth Amendment prohibits the States from depriving any person of property without "due process of law." Dusenberry v. United States, 534 U.S. 161, 167 (2002). The Due Process Clause requires, at a minimum, notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 657 (1950).

42. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of their constitutional right to because they were not permitted to attend a school located in the district in which they reside without notice even though, the Plaintiffs have a property interest in the School District.

43. In the manner described more fully above, the Defendants deliberately terminated and withdraw the Nneji Children from Memorial High School without notice to their parents, as well as fabricated the reason for doing so.

44. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of the Nnejis federally protected constitutional rights.

45. They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

46. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

47. These individual Defendants acted in concert and joint action with each other.

48. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

49. These individual Defendants are not entitled to qualified immunity for the complained of conduct.

50. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

51. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

52. On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

53. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiffs.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1981 (AGAINST DEFENDANT BOWHUIS)**

54. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

55. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

56. Plaintiffs in this action is a citizen of the United States and all of the individual School District official Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

57. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Spring Branch, ISD officer and their acts or omissions were conducted within the scope of their official duties or employment.

58. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

59. Title 42 U.S.C. § 1981("Section 1981") provides, in pertinent part:

   (a) All persons within the jurisdiction of the United States shall have the
same right in every State and Territory to make and enforce contracts,
to sue, be parties, give evidence, and to the full and equal benefit of all
laws and proceedings for the security of persons and property as is
enjoyed by white citizens, and shall be subject to like punishment,
pains, penalties, taxes, licenses, and exactions of every kind, and to no
other.

60. Plaintiffs, as an African American is a member of a protected class, and thus also had the

clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free

from racially motivated the filing of false statement.

61. Any reasonable school official knew or should have known of these rights at the time of

the complained of conduct as they were clearly established at that time.

62. Plaintiffs' race and National Original were the motivating factor in the decisions to

maliciously withdraw their children from school without notice or a care of the Children

best interest which is the public policy of the State of Texas.

63.  Defendants' conduct was undertaken with the purpose of depriving Plaintiffs of the

equal protection and benefits of the law, equal privileges and immunities under the law,

and due process in violation of the Fourteenth Amendment and § 1981.

64. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in

bad faith, and in reckless disregard of the Plaintiffs' federally protected rights.

65. The acts or omissions of all individual Defendants were moving forces behind Plaintiffs'

injuries.

66. These individual Defendants acted in concert and joint action with each other.

67. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff

of their constitutional and statutory rights and caused them other damages.

68. Defendants are not entitled to qualified immunity for the complained of conduct.

69. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiffs.

70. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

71. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

72. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiffs.

## THIRD CLAIM FOR RELIEF
## 42 U.S.C. § 1983 – VIOLATION OF THE FIRST AMENDMENT RIGHT TO PRIVACY (AGAINST DEFENDANTS BOWHUIS)

73. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

74. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

75. Plaintiff in this action is a citizen of the United States and all of the individual School District officer(s)  Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

76. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Spring Branch ISD officer(s0 and their acts or omissions were conducted within the scope of their official duties or employment.

77. At the time of the complained of events, Plaintiffs the clearly established constitutional right to privacy in the exercise of protected speech and in his relationship with Uber and the company and the driver in particular

78. Any reasonable person and a school official in particular based on the recent school shootings knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

79. Defendants engaged in the conduct described as it relates to the Uber driver, by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Nnejis' federally protected constitutional rights.

80. The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

81. These individual Defendants acted in concert and joint action with each other.

82. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

83. Defendants are not entitled to qualified immunity for the complained of conduct.

84. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

85. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

86. On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

87. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiffs

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1983 – DELIBERATELY INDIFFERENT**
**POLICIES, PRACTICES, CUSTOMS,**

### TRAINING, AND SUPERVISION IN VIOLATION OF THE FOURTEENTH, AND FIRST AMENDMENTS AND IN VIOLATION OF 42 U.S.C. § 1981 (AGAINST THE SPRING BRANCH ISD DEFENDANT AND DR. SCOTT R. MURI ONLY)

88. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

89. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

90. Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

91. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

92. Plaintiffs had the following clearly established rights at the time of the complained of conduct:

    a. the right to property under the Fourteenth Amendment;
    b. the right to exercise his constitutional rights to privacy of free speech under the First Amendment without retaliation and
    c. the right to be free from discrimination by school officials under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981; and,

93. Defendant Spring Branch ISD Defendant and Dr. Scott R. Muri knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

94. The acts or omissions of these Defendants, as described herein, deprived Mr. Landau of his constitutional and statutory rights and caused him other damages.

95. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

96. Defendants are not entitled to qualified immunity for the complained of conduct.

97. Spring Branch ISD Defendant and Dr. Scott R. Muri were, at all times relevant, policymakers for the Memorial High School and Mr. Bowhuis and in that capacity established policies, procedures, customs, and/or practices for the same.

98. These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Landau's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

99. Spring Branch ISD Defendant and Dr. Scott R. Muri have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

100.　　　In light of the duties and responsibilities of that participate in the interaction with people of various race, national origins, gender and manner the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those

described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

101.    The deliberately indifferent training and supervision provided by Spring Branch ISD Defendant and Dr. Scott R. Muri resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Spring Branch ISD Defendant and Dr. Scott R. Muri and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

102.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial.

103.    On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

104.    Finally, Plaintiffs seek appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein

**FIFTH CLAIM FOR RELIEF**

**EQUITABLE RELIEF-INJUNCTIONS**

105.     Plaintiffs hereby reincorporate and adopt by reference for all purposes each and

every allegation contained in the preceding paragraphs and sections numbered I through

106.     Plaintiffs seek a temporary restraining order, and temporary and permanent

injunction enjoining Defendants, their agents, employees, and all other persons acting in

active concert with them from, *inter alia, withdrawing their children from Memorial*

*High School while this case is pending,*

107.     As demonstrated above, the Defendants, illegal conduct, directive/order is a

violation of the law and Plaintiffs are likely to succeed on the merits of his lawsuit.

108.     If the temporary restraining order and temporary and permanent injunction is not

granted, Plaintiffs will suffer a probable injury. As a result of Defendants' unlawful act,

harm is imminent, the injury would be irreparable, and Plaintiffs have no other adequate

legal remedy.

109.     Plaintiffs are willing to post a minimal bond of 100.00.

**SIXTH ACTUAL DAMAGES**
A.  ACTUAL DAMAGES

110.     As a direct and proximate result of the acts and omissions of Defendants set forth

above, Plaintiffs have incurred damages in excess of the minimum jurisdictional limits of

this Court.

B. Attorney's Fees

111.     Plaintiffs have been required to retain the services of the undersigned attorneys to

bring this action. By virtue of Defendants' conduct as alleged above, an award of

reasonable attorneys' fees to Plaintiffs is recoverable pursuant to §38.001 of the Texas

Civil Practice *&* Remedies Code.

112.     Accordingly, Plaintiffs request that the Court issue a temporary restraining order immediately, without notice, enjoining Defendants from terminating and/or withdrawing them from Memorial High School.

113.     Further, Plaintiffs request that this restraining order be continued after hearing into a temporary injunction until final hearing, at which time a permanent injunction should be granted.

## PRAYER FOR EQUITABLE RELIEF

HAVING CONSIDERED THESE PREMISES, Plaintiffs request that the Court issue a temporary restraining order, temporary injunction and permanent injunction, restraining and enjoining Defendants and their agents and any persons acting in concert with them from terminating the withdrawing from Memorial High School.

Plaintiffs further request that Defendants be cited to appear and answer, and that upon final trial, Plaintiffs have and recover:

a.   Judgment against Defendants, for Plaintiffs' damages in an amount in excess of the jurisdictional limits of this Court;

b.   reasonable attorney's fees;

c.   pre-judgment interest as allowed by law;

d.   post-judgment interest as allowed by law;

e.   all costs of suits; and

f.   such other and further relief to which Plaintiffs may be justly entitled.

### VI. PRAYER FOR RELIEF

114.     Plaintiff prays that this Court enter judgment for the Plaintiff and against each of

the Defendants and grant:

    a.  compensatory and consequential damages, including damages for emotional

        distress, humiliation, loss of enjoyment of life, and other pain and suffering on

        all claims allowed by law in an amount to be determined at trial;

    b.  economic losses on all claims allowed by law;

    c.  special damages in an amount to be determined at trial;

    d.  punitive damages on all claims allowed by law against individual Defendants

        and in an amount to be determined at trial;

    e.  attorneys' fees and the costs associated with this action under 42 U.S.C. §

        1988, including expert witness fees, on all claims allowed by law;

    f.  pre- and post-judgment interest at the lawful rate; and,

    g.  any further relief that this court deems just and proper, and any other

        appropriate relief at law and equity.


**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

                                        By:     /s/ <u>Diogu Kalu Diogu II, LL.M</u>
                                                Diogu Kalu Diogu II, LL.M.
                                                State bar No. 24000340
                                                DIOGU LAW FIRM PLLC
                                                P. O. Box 994,
                                                Fulshear, Texas 77441
                                                Phone (713) 791 3225
                                                Fax     (832) 408-7611
                                                diogu.diogu.law.firm@gmail.com
                                                ATTORNEY FOR PLAINTIFFS



# MEMORIAL HIGH SCHOOL
## SPRING BRANCH INDEPENDENT SCHOOL DISTRICT

January 10, 2019

TO:  The Parents of Adanna and Obinna Nneji
2303 Welch Street
Houston, TX 77019

RE:  Administrative Withdraw

Ms. Hattie Nneji and Mr. Obinna Nneji

It has been brought to our attention that Adanna and Obinna no longer live in the Memorial High School zone.  Adanna and Obinna should be enrolled at another school based on the address on Welch Street.

This letter is to advise you that they will both be withdrawn from Memorial High School effective Thursday, January 10, 2019.


Sincerely,


Dr. Gregory Bowhuis
Assistant Principal
Memorial High School
Class of 2020
713-251-2708

935 ECHO LANE • HOUSTON, TX 77024 • PHONE 713-251-2500 • FAX 713-365-5138
WWW.MHSWEB.COM OR WWW.SPRINGBRANCHISD.COM

Spring Branch ISD
101920

ADMISSIONS                                                                        FD
                                                                              (LEGAL)

**General Eligibility**      A board or its designee shall admit into the public schools of a dis-
                            trict free of tuition all persons who are over five and younger than
                            21 years of age on September 1 of any school year in which ad-
                            mission is sought, and may admit a person who is at least 21 and
                            under 26 for the purpose of completing the requirements for a high
                            school diploma, if any of the following conditions exist:

Student and Parent       1.  The person and either parent reside in the district.

Conservator              2.  The person does not reside in the district, but one of the par-
                            ents resides in the district and that parent is a joint managing
                            conservator or the sole managing conservator or possessory
                            conservator of the person.

Guardian or Person       3.  The person and his or her guardian or other person having
Having Lawful              lawful control under an order of a court reside in the district.
Control

Students Living          4.  The person is under the age of 18 and has established a sep-
Separate and Apart          arate residence in the district apart from his or her parent,
                            guardian, or other person having lawful control under an order
                            of a court and has established that the person's presence in
                            the district is not for the primary purpose of participation in ex-
                            tracurricular activities. A board is not required to admit such
                            person, however, if the person has:

                         a.  Engaged in conduct that resulted in removal to a disci-
                            plinary alternative education program or expulsion within
                            the preceding year;

                         b.  Engaged in delinquent conduct or "conduct in need of
                            supervision" and is on probation or other conditional re-
                            lease for that conduct; or

                         c.  Been convicted of a criminal offense and is on probation
                            or other conditional release.

                         *Education Code 25.001(a)–(b), (d)*

Homeless Students        5.  The person is homeless. [See also FDC]

                         a.  "Homeless children" under the McKinney-Vento Home-
                            less Assistance Act, means children or youths who lack
                            a fixed, regular, and adequate nighttime residence; and
                            includes:

                            (1)  Children who are sharing the housing of other per-
                                sons due to loss of housing, economic hardship, or
                                a similar reason; are living in motels, hotels, trailer
                                parks, or camping grounds due to the lack of alter-
                                native adequate accommodations; are living in

Spring Branch ISD
101920

ADMISSIONS                                                                                      FD
(LEGAL)

emergency or transitional shelters; or are abandoned in hospitals;

(2)   Children who have a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings;

(3)   Children who are living in cars, parks, public spaces, abandoned buildings, substandard housing, bus or train stations, or similar settings; and

(4)   Migratory children living in circumstances described above.

"Migratory child" means a child who made a qualifying move in the preceding 36 months:

(a)   As a migratory agricultural worker or a migratory fisher; or

(b)   With, or to join, a parent or spouse who is a migratory agricultural worker or a migratory fisher. [See EEB]

b.   A person is homeless, for purposes of Education Code 25.001(b)(5), regardless of the residence of the person, of either parent, or of the person's guardian or other person having lawful control, if:

(1)   The person lacks a fixed, regular, and adequate nighttime residence; or

(2)   The person has a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;

(3)   The person lives in a supervised publicly or privately operated shelter designated to provide temporary living accommodations (including hotels and motels paid for by government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);

(4)   The person resided in a shelter or place not meant for human habitation and is exiting an institution where he or she temporarily resided;

Spring Branch ISD
101920

ADMISSIONS

FD
(LEGAL)

> (5) The person will imminently lose their housing, has no subsequent residence identified, and lacks the resources or support networks needed to obtain other housing; and
>
> (6) The person is an unaccompanied youth or part of a homeless family with children and youth defined as homeless under other federal statutes who:
>
> > (a) Has experienced a long-term period without living independently in permanent housing;
> >
> > (b) Has experienced persistent instability as measured by frequent moves over such peri-od; and
> >
> > (c) Can be expected to continue in such status for an extended period of time because of chronic disabilities, chronic physical or mental health conditions, substance addiction, histories of domestic violence or childhood abuse, the presence of a child or youth with a disability, or multiple barriers to employment.

*Education Code 25.001(b)(5); 20 U.S.C. 6399; 42 U.S.C. 11434a(2); 42 U.S.C. 11302*

**Foreign Exchange Students**

6. The person is a foreign exchange student placed with a host family that resides in the district by a nationally recognized foreign exchange program, unless the district has applied for and been granted a waiver by the commissioner of education because:

   a. This requirement would impose a financial or staffing hardship on the district;

   b. The admission would diminish the district's ability to pro-vide high-quality education services for the district's do-mestic students; or

   c. The admission would require domestic students to com-pete with foreign exchange students for educational re-sources.

*Education Code 25.001(b)(6), (e)*

**Students in Residential Facility**

7. The person resides at a residential facility, as defined in Edu-cation Code 5.001, located in the district. For purposes of en-rollment, a person who resides in a residential facility is con-sidered a resident of the district in which the facility is located. *Education Code 25.001(b)(7), 29.012(c)*

Spring Branch ISD
101920

ADMISSIONS                                                           FD
                                                                (LEGAL)

| | | |
|---|---|---|
| Students Over 18 | 8. | The person resides in the district and is 18 or older or the person's disabilities of minority have been removed. *Education Code 25.001(b)(8)* |
| Resident Grandparent | 9. | The person does not reside in the district but the grandparent of the person: |

          a.    Resides in the district; and

          b.    Provides a substantial amount of after-school care for the person as determined by the board.

*Education Code 25.001(b)(9)*

**Proof of Eligibility**    A district may require evidence that a person is eligible to attend the public schools of the district at the time it considers an application for admission of the person. A board or its designee shall establish minimum proof of residency acceptable to a district. A board or its designee may make reasonable inquiries to verify a person's eligibility for admission. When admission is sought under item 4 above, a board shall determine whether an applicant qualifies as a resident of a district and may adopt reasonable guidelines for making that determination as necessary to protect the best interest of students. *Education Code 25.001(c), (d)*

"Residence" Defined    "Residence" requires living in the district and having the present intention to remain there. <u>Martinez v. Bynum</u>, *461 U.S. 321 (1983*)

A district may withdraw any student who ceases to be a resident. <u>Daniels v. Morris</u>, *746 F.2d 271 (5th Cir. 1984)*

**Immigration Status**    Denying enrollment based upon immigration status to children who are not legally admitted into the United States violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. <u>Plyler v. Doe</u>, *457 U.S. 202 (1982)*

**High School Equivalency Certificate**    A student who has received a high school equivalency certificate is entitled to enroll in a public school in the same manner as any other student who has not received a high school diploma. *Education Code 29.087(h)*

**Substitute for Parent or Guardian**    A board by policy may allow a person showing evidence of legal responsibility for a child other than an order of a court to substitute for a guardian or other person having lawful control of the child under court order. *Education Code 25.001(j)*

**Authorization Agreement**    "Adult caregiver" means an adult person whom a parent has authorized to provide temporary care for a child under Family Code Chapter 34. *Family Code 34.0015(1)*

Spring Branch ISD
101920

ADMISSIONS                                                              FD
                                                                    (LEGAL)

A parent, as defined in Family Code 101.024, or both parents of a child may enter into an authorization agreement with an adult caregiver to authorize the adult caregiver to perform acts described in Family Code 34.002 in regard to the child, such as:

1.  Authorizing medical, dental, psychological, or surgical treatment and immunization of the child, including executing any consents or authorizations for the release of information as required by law relating to the treatment or immunization;

2.  Enrolling the child in the district; and

3.  Authorizing the child to participate in age-appropriate extracurricular, civic, social, or recreational activities, including athletic activities.

*Family Code 34.002*

A parent may enter into an authorization agreement with an adult caregiver with whom a child is placed under a parental child safety placement agreement approved by the Department of Family and Protective Services (DFPS) to allow the person to perform the acts described above with regard to the child during an investigation of abuse or neglect or while the department is providing services to the parent. *Family Code 34.0021*

The authorization agreement must conform to the requirements of Family Code Chapter 34.

A child who is the subject of an authorization agreement is not considered to be placed in foster care and the parties to the agreement are not subject to any law or rule governing foster care providers. *Family Code 34.0022(b)*

An authorization agreement does not affect the rights of the child's parent or legal guardian regarding the care, custody, and control of the child, and does not mean that the adult caregiver has legal custody of the child. *Family Code 34.007(b)*

Only one authorization agreement may be in effect for a child at any time. Execution of a subsequent authorization agreement does not by itself supersede, invalidate, or terminate a prior authorization agreement. An authorization agreement is void if it is executed while a prior authorization agreement remains in effect. *Family Code 34.002(d), .008(f)*

An authorization agreement is for a term of six months and renews automatically for six-month terms unless an earlier expiration date is stated in the agreement, the agreement is terminated under

Spring Branch ISD
101920

ADMISSIONS                                                                          FD
                                                                                 (LEGAL)

|  | Family Code 34.008, or a court authorizes continuation. *Family Code 34.0075* |
|---|---|
| Immunity | A person who is not a party to the authorization agreement who relies in good faith on the authorization agreement, without actual knowledge that the authorization agreement is void, revoked, or invalid, is not subject to civil or criminal liability to any person, and is not subject to professional disciplinary action, for that reliance if the agreement is completed as required by Family Code Chapter 34. *Family Code 34.007(a)* |

> ***Note:*** The Authorization Agreement for Nonparent Relative (PDF)[1] is available on the DFPS website.

**Temporary Authorization for Care**

A person eligible to consent to treatment of a child under Family Code 32.001 or a person eligible to enter an authorization agreement [see Authorization Agreement, above] may seek a court order for temporary authorization for care of a child by filing a petition in the district court in the county in which the person resides if:

1. The child has resided with the person for at least the 30 days preceding the date the petition was filed; and

2. The person does not have an authorization agreement or other signed, written documentation from a parent, conservator, or guardian that enables the person to provide necessary care for the child.

*Family Code 35.001–.002*

The order may authorize the petitioner to, among other things:

1. Consent to medical, dental, psychological, and surgical treatment and immunization of the child;

2. Enroll the child in the district; and

3. Authorize the child to participate in age-appropriate extracurricular, civic, social, or recreational activities, including athletic activities.

A temporary authorization order does not affect the rights of the child's parent, conservator, or guardian regarding the care, custody, and control of the child, and does not establish legal custody of the child. *Family Code 35.007(b)*

Immunity

A person who relies in good faith on a temporary authorization order is not subject to civil or criminal liability to any person, or to professional disciplinary action. *Family Code 35.007(a)*

Spring Branch ISD
101920

ADMISSIONS                                                                    FD
                                                                        (LEGAL)

**Students in Foster Care**   A child placed in foster care by an agency of the state or a political subdivision shall be permitted to attend schools in the district in which the foster parents reside free of any charge to the foster parents or to the agency. A durational residence requirement may not be used to prohibit that child from fully participating in any activity sponsored by a district. *Education Code 25.001(f)*

A student who was enrolled in a primary or secondary public school before the student entered the conservatorship of DFPS and who is placed at a residence outside the attendance area for a school or outside a district is entitled to continue to attend the school in which the student was enrolled immediately before entering conservatorship until the student successfully completes the highest grade level offered by the school at the time of placement without payment of tuition. The student is entitled to continue to attend the school regardless of whether the student remains in the conservatorship of DFPS for the duration of the student's enrollment in the school. *Education Code 25.001(g)*

If a student who is in the conservatorship of DFPS is enrolled in a primary or secondary public school, other than the school in which the student was enrolled at the time the student was placed in the conservatorship of DFPS, the student is entitled to continue to attend that school without payment of tuition until the student successfully completes the highest grade level offered by the school at the time of enrollment in the school, even if the child's placement is changed to a residence outside the attendance area for that school or outside the district. The student is entitled to continue to attend the school regardless of whether the student remains in the conservatorship of DFPS for the duration of the student's enrollment in the school. *Education Code 25.001(g-1)*

A written case plan for any child in foster care under the responsibility of the state must include a plan for ensuring the educational stability of the child while in foster care, including:

1.   Assurances that each placement of the child in foster care takes into account the appropriateness of the current educational setting and the proximity to the school in which the child in enrolled at the time of placement; and

2.   An assurance that the appropriate state agency has coordinated with a district to ensure that the child remains in the school in which the child is enrolled at the time of each placement; or if remaining in that school is not in the best interests of the child, assurances by the state agency and the district to provide immediate and appropriate enrollment in a new school, with all of the educational records of the child provided to the school.

Spring Branch ISD
101920

ADMISSIONS                                                                                      FD
                                                                                          (LEGAL)

*42 U.S.C. 675(1)(G), 675a* [See CNA]

**Transfers from Other States**

A district shall charge tuition for a student who resides in a residential facility and whose maintenance or expenses are paid in whole or in part by another state or the United States. Any such tuition charge must be submitted to the commissioner for approval. The attendance of students admitted under this provision shall not be counted for purposes of allocating state funds to a district. *Education Code 25.003*

**Students Holding F-1 Student Visas**

If a student is required, as a condition of obtaining or holding the appropriate U.S. student visa, to pay tuition to the district that the student attends to cover the cost of the student's education provided by the district, the district shall accept tuition for the student in an amount equal to the full unsubsidized per capita cost of providing the student's education for the period of the student's attendance at school in the district.

The commissioner shall develop guidelines for determining the amount of the full unsubsidized per capita cost of providing a student's education. A district may not accept tuition in an amount greater than the amount computed under the commissioner's guidelines unless the commissioner approves a greater amount as a more accurate reflection of the cost of education to be provided by the district.

The attendance of a student for whom a school district accepts tuition is not counted for purposes of allocating state funds to the district.

*Education Code 25.0031*

---

**Note:**   Enrolling students with F-1 visas is optional. If the district is interested in enrolling students with F-1 visas, it must comply with the federal Student and Exchange Visitor Program[2] (SEVP) under the Department of Homeland Security.

---

**Texas Juvenile Justice Department**

A school-age child of an employee of the Texas Juvenile Justice Department (TJJD) residing in an adjacent district may attend school in a district free of charge to his or her parents or guardian. Any tuition required by the admitting district shall be paid by the district from which the student transfers out of any funds appropriated to the TJJD facility. *Education Code 25.042*

**Enrollment**

A child must be enrolled by the child's parent, guardian, or other person with legal control under a court order. A district shall record

Spring Branch ISD
101920

ADMISSIONS                                                                                          FD
                                                                                                (LEGAL)

the name, address, and date of birth of the person enrolling the child. *Education Code 25.002(f)*

**Legal Surname**

A student must be identified by the student's legal surname as it appears on the student's birth certificate or other document suitable as proof of the student's identity, or in a court order changing the student's name. *Education Code 25.0021*

**Required Documentation**

If a parent or other person with legal control of a child enrolls the child in a district school, the parent or other person, or the school district in which the child most recently attended school, shall furnish to the district all of the following:

1.   The child's birth certificate, or another document suitable as proof of the child's identity as defined by the commissioner in the *Student Attendance Accounting Handbook*.

2.   A copy of the child's records from the school the child most recently attended if he or she was previously enrolled in a school in Texas or in another state.

     Students shall not be denied enrollment or be removed solely because they fail to provide the documentation required in items 1 and 2, above.

3.   A record showing that the child has the immunizations required by Education Code 38.001, proof that the child is not required to be immunized, or proof that the child is entitled to provisional admission. [See FFAB]

*Education Code 25.002(a); 19 TAC 129.1(a)–(b)*

A district must furnish information under items 1 and 2 not later than the tenth working day after the date the district receives a request for the information.

A parent or other person with legal control of a child under a court order must furnish information under items 1 and 2 not later than the 30th day after the date a child is enrolled in a public school.

If a parent or other person with legal control of a child under a court order requests that a district transfer a child's student records, the district to which the request is made shall notify the parent or other person as soon as practicable that the parent or other person may request and receive an unofficial copy of the records for delivery in person to a school in another district.

*Education Code 25.002(a-1)*

**Residential Facility**

Except for a juvenile pre-adjudication secure detention facility or a juvenile post-adjudication secure correctional facility, a residential

ADMISSIONS                                                                    FD
                                                                        (LEGAL)

facility shall provide to a district that provides educational services to a student placed in the facility any information retained by the facility relating to:

1. The student's school records, including records regarding special education eligibility or services, behavioral intervention plans, school-related disciplinary actions, and other documents related to the student's educational needs;

2. Any other behavioral history information regarding the student that is not confidential under another law; and

3. The student's record of convictions or the student's probation, community supervision or parole status, as provided to the facility, if necessary to provide education services to the student.

*Education Code 29.012(f), (g)*

**Summer School Enrollment**

A district shall permit a person who is eligible under Education Code 25.001 [see General Eligibility, above] to attend school in the district but who is not enrolled in school in the district to enroll in a district summer school course on the same basis as a district student, including satisfaction of any course eligibility requirement and payment of any fee authorized under Education Code 11.158 [see FP] that is charged in connection with the course.

This requirement does not apply to enrollment in a Summer Intensive Mathematics Instruction Program under Education Code 29.088, a Summer Intensive Science Instruction Program under Education Code 29.090, or an Intensive Summer Program under Education Code 29.098 or in a similar intensive program.

*Education Code 25.008*

Food Allergy Information

On enrollment, a district shall request, by providing a form or otherwise, that a parent or other person with legal control of the child under a court order disclose whether the child has a food allergy or a severe food allergy that, in the judgment of the parent or other person with legal control, should be disclosed to the district to enable the district to take any necessary precautions regarding the child's safety [see FB and FFAF]; and specify the food to which the child is allergic and the nature of the allergic reaction.

The district shall maintain the confidentiality of the provided information, and may disclose the information to teachers, school counselors, school nurses, and other appropriate school personnel only to the extent consistent with district policy under Education Code 38.009 and permissible under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. Section 1232g. [See FL]

Spring Branch ISD
101920

ADMISSIONS                                                                    FD
                                                                        (LEGAL)

"Severe food allergy" means a dangerous or life-threatening reaction of the human body to a food-borne allergen introduced by inhalation, ingestion, or skin contact that requires immediate medical attention.

*Education Code 25.0022(a)–(c)*

**Child in DFPS Possession**

A district shall enroll a child without the required documentation if DFPS has taken possession of the child. DFPS shall ensure that the required documentation is furnished to a district not later than the 30th day after the date the child is enrolled. *Education Code 25.002(g)*

**Inconsistent Documentation**

If a child is enrolled under a name other than the name that appears in the identifying documents or records, a district shall notify the missing children and missing persons information clearinghouse of the child's name as shown on the identifying records and the name under which the child is enrolled.

**Missing Documentation**

If the required documents and other records are not furnished to a district within 30 days after enrollment, the district shall notify the police department of the city or the sheriff's department of the county in which the district is located and request a determination of whether the child has been reported as missing.

*Education Code 25.002(b)–(c)*

**Students Under 11**

On enrollment of a child under 11 years of age in a school for the first time at the school, the school shall:

1.   Request from the person enrolling the child the name of each previous school attended by the child;

2.   Request from each school identified in item 1 the school records for the child and, if the person enrolling the child provides copies of previous school records, request verification from the school of the child's name, address, date, and grades and dates attended; and

3.   Notify the person enrolling the student that not later than the 30th day after enrollment, or the 90th day if the child was not born in the United States, the person must provide:

     a.   A certified copy of the child's birth certificate; or

     b.   Other reliable proof of the child's identity and age and a signed statement explaining the person's inability to produce a copy of the child's birth certificate.

If a person enrolls a child under 11 years of age in school and does not provide the valid prior school information or documentation re-

Spring Branch ISD
101920

ADMISSIONS                                                                          FD
(LEGAL)

quired, the school shall notify the appropriate law enforcement
agency before the 31st day after the person fails to comply.

*Code of Criminal Procedure 63.019*

**False Information**   When accepting a child for enrollment, a district shall inform the
parent or other person enrolling the child that presenting a false
document or false records in connection with enrollment is a crimi-
nal offense under Penal Code 37.10 (Tampering with Governmen-
tal Records) and that enrolling the child under false documents
makes the person liable for tuition or other costs as provided be-
low. *Education Code 25.002(d)*

In addition to the penalty under Penal Code 37.10, a person who
knowingly falsifies information on a form required for a student's
enrollment in a district is liable to the district if the student is not
eligible for enrollment, but is enrolled on the basis of false infor-
mation. For the period during which the ineligible student is en-
rolled, the person is liable for the maximum tuition fee a district
may charge [see FDA] or the amount a district has budgeted per
student as maintenance and operating expense, whichever is
greater. *Education Code 25.001(h)*

A district may include on its enrollment form notice of the legal
penalties and liability for falsifying information on the form. *Educa-
tion Code 25.001(i)*

**Placement of
Transfers**

Credits and
Records

A district shall accept all credits earned toward state graduation
requirements by students in accredited Texas school districts, in-
cluding credits earned in accredited summer school programs.
Credits earned in local credit courses may be transferred at a dis-
trict's discretion. Transfer students shall not be prohibited from at-
tending school pending receipt of transcripts or academic records
from the district the student previously attended. *19 TAC
74.26(a)(1)*

A district shall grant a student credit toward the academic course
requirements for high school graduation for courses the student
successfully completes in TJJD educational programs. *Education
Code 30.104(a)*

Each district shall consider course credit earned by a student while
in a juvenile justice alternative education program as credit earned
in a district school. *Education Code 37.011(d)*

Nonpublic Schools   Records and transcripts of students from Texas nonpublic schools
or from out of state or out of the country (including foreign ex-
change students) shall be evaluated, and students shall be placed
promptly in appropriate classes. A district may use a wide variety of

Spring Branch ISD
101920

ADMISSIONS                                                                          FD
                                                                               (LEGAL)

methods to verify the content of courses for which a transfer student has earned credit. *19 TAC 74.26(a)(2)*

**Foundation School Program**

A person is entitled to the benefits of the available school fund for a school year if:

1.  On September 1 of the year, the person:

    a.  Is at least five years of age and under 21 years of age, and has not graduated from high school;

    b.  Is at least 21 years of age and under 26 years of age and is admitted by a school district to complete the requirements for a high school diploma; or

    c.  Is at least 19 years of age and under 26 years of age and is enrolled in an adult high school diploma and industry certification charter school pilot program under Education Code 29.259.

2.  The person is enrolled in prekindergarten under Education Code 29.153 or Subchapter E-1, Chapter 29 [see EHBG].

3.  The person is younger than five years of age and performs satisfactorily on the state assessment instrument administered to third graders and a district has adopted a policy to admit students younger than five years of age.

4.  The person is enrolled in the first grade and is at least six years of age at the beginning of the current school year or has been enrolled in the first grade, or has completed kindergarten, in the public schools of another state before transferring to a Texas public school.

*Education Code 25.001(a), 42.003*

**Screening**

The principal of each district school shall ensure that each student admitted to that school has complied with requirements for screening of special senses and communication disorders, spinal screening, and a risk assessment for Type 2 diabetes, or has submitted an affidavit of exemption. *Health and Safety Code 36.005, 37.002, 95.003(c)* [See FFAA]

**Pest Control Information**

Chief administrators or the integrated pest management (IPM) coordinators of schools must notify the parents or guardians of children attending the facility in writing that pesticides are periodically applied indoors and outdoors, and that information on the times and types of applications and prior notification is available upon request. Such notification must be made at the time of the students' registration. Telephonic, written, or electronic notification of

Spring Branch ISD
101920

ADMISSIONS                                                                                    FD
                                                                                        (LEGAL)

planned applications will meet the notification requirements. *4 TAC 7.148(c); Occupations Code 1951.455(b)* [See CLB]

---

[1] Authorization Agreement for Nonparent Relative (PDF): http://www.dfps.state.tx.us/Application/Forms/showFile.aspx?NAME=2638.pdf

[2] Student and Exchange Visitor Program: https://www.ice.gov/sevis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTONS DIVISION

| | | | |
|---|---|---|---|
| **HATTIE NNEJI AND OBINNA NNEJI** | ) | | |
| **PLAINTIFFS** | ) | | |
| | ) | | |
| **VS.** | ) | **NO. _____** | |
| | ) | | |
| **DR. GREGORY BOWHUIS,** | ) | | |
| **DR. SCOTT R. MURI, SPRING BRANCH ISD** | ) | | |
| **DEFENDANTS** | ) | **JURY REQUESTED** | |

### AFFIDAVIT OF HATTIE NNEJI

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned Notary Public, on this day personally appeared, Hattie Nneji, ("NNEJI") known to me, who being by me duly sworn upon his/her oath, deposed and said:

1.   "My name is Hattie Nneji, ("NNEJI") I am over 21 years of age and have personal knowledge of the facts stated herein and they are all true and correct.

2.   "On or about Thursday, without prior notice, the Assistant Principal of Memorial High Scholl, in the Spring Branch ISD. See attached Exhibit "A" They did so based on an uncorroborated and hearsay information, Mr. Bowhuis, forcibly pried from an Uber driver that dropped my children at the School. ***THEY HAVE BEEN OUT OF SCHOOL FOR 4 DAYS***.

3.   "Since the initial enrollment of our children Obinna and Adanna Nneji at the School, the Assistant Principal Bowhuis has singled my family out for desperate treatment, in so doing he has made our family and our children feel unwelcome at Memorial High School thereby creating a hazardous learning environment for my children.

4.   "At the time we first enrolled our children in Memorial High School, in the Spring Branch ISD, we provided the school all the required evidence showing that our children are eligible to attend the public schools of the district at the time the school considered our application for admission for my children.

5.   "Nonetheless, the assistant principal Mr. Gregory Bowhuis had had a police officer, (a) escort us to our apartment, (b) walked us to the door (c) forced us to open the door so he could he could inspect our apartment to make sure we really lived there. Despite the outrageous conduct public officer we cooperated fully with him and the officer.

6.   "Despite our cooperation with him, Mr. Bowhuis and Memorial High School have singled out and have continued to treat my family unfairly. He has on more than one occasion

called us liars to my husband, my children and myself separately and collective.  The extremely questionable, rude, and disrespectful behaviors of Mr. Bowhuis towards my family is very unbecoming of a public official in his position.

7.  "All though this school year, Mr. Bowhuis would make odd comments to the children about the cars that their father drives. He appears to be stalking my family. By way of example, (a) mentioned to my daughter that he saw her father on highway 610 driving; (2) He once inquired on why is he always in the galleria area if he resides in Spring Branch. (3) He also made comments about the clothes my husband wears stating that he admires his choice of attire. (4) Mr. Bowhuis also questioned my husband about the properties that he owns and (5) Interrogating him about why is he living in an apartment if he owns a million dollar home.

8.  "There can be no other explanation other than he wanted to force to voluntarily withdraw from that school but we persevered.

9.  "His behavior took a different turn on Thursday, January 10, 2019 when my children were dropped off at school by an Uber Driver. Specifically, Mr. Bowhuis rushed to the uber driver and aggressively forced him to give him a receipt so he can see where my kids were picked up from.

10. "Mr. Bowhuis called our children in his office and spoke to them in a very rude manner. Mr. Bowhuis then took my kids to the office where he interrogated them, called them liars, and without notice to me and my husband withdrew them from school. All through this period he never once made an effort to contact my husband or I.

11. "In that meeting, without their parents' permission, he accused them of lying about their residence. The kids denied his accusations and he pulled out his phone and showed them a screenshot of the Uber driver's car report. He told the kids he pulled the Uber driver over and asked him where he picked the kids from. The kids told them they spent the night with their family member. He said they were lying and that he was withdrawing them from the school and they were no longer allowed at Memorial High School.

12. "If this was not enough he then began questioning my son on "why he dress as such" referring that his attire is expensive. He asked him why he always carry a certain bag and has searched his bag on numerous occasions. He has also asked children around the school if my son has offered them drugs. Because we are an affluent African American family we are being stereotyped as drug dealers.

13. "This type if bullying is very despicable and extremely harmful especially coming from a man that is a leader and represents the school. With Mr. Bowhuis questioning our family and entering of our dwelling as he did lead me to believe that he has a personal vendetta against our family. In fact, my daughter was so traumatized that she took the attached note. See attached Exhibit "B"

14. "There can be no other reason except that Mr. Bowhuis and the Memorial High School treatment of my family is based both on racial and national origin animus."

In witness whereof, this _____14_____ day of January 2019

Signed: _____

Hattie Nneji, ("NNEJI")

**SUBCRIBED TO AND SWORN TO BEFORE ME**, on the _14_ day of January,

2019, to certify which witness my hand and official seal.

_____

Notary Public in and for the State of Texas

JACOB PEDRAZA
Notary Public, State of Texas
Comm. Expires 03-14-2023
Notary ID 126038438